3-4-09 Evidentiary Hearing Transcript.txt

1

```
 1                    UNITED STATES BANKRUPTCY COURT
                        MIDDLE DISTRICT OF FLORIDA
 2                        JACKSONVILLE DIVISION

 3

 4   In re:

 5      AGNES E. SOMMERFIELD,

 6          Debtor.          CASE NO.  08-07008-3G3

 7   _____/

 8

 9                    TRANSCRIPT OF PROCEEDINGS

10

11          Final Evidentiary Hearing on a Motion for

12   Relief from Stay before Chief Judge Paul M. Glenn,

13   United States Bankruptcy Judge, Courtroom 4A, 300

14   North Hogan Street, Jacksonville, Florida,

15   Wednesday, March 4, 2009, to commence at 3:00 p.m.,

16   as reported by Loretta D. McDonald, a Notary Public

17   in and for the State of Florida at Large.

18

19                        - - -

20

21

22   _____

23                STATEWIDE REPORTING SERVICE
                   233 East Bay Street, Suite 606
24                  Jacksonville, Florida  32202
                (904) 353-7706        Fax (904) 353-2507
25
```

3-4-09 Evidentiary Hearing Transcript.txt

2

1                        A P P E A R A N C E S

2

3

4

5

6          EDWARD P. JACKSON, Esquire,

7              255 North Liberty Street
               Jacksonville, Florida  32202
8
               Attorney for the Debtor.
9

10

11         NELSON BELLIDO, Esquire,

12             355 Alhambra Circle
                  Suite 1250
13             Coral Gables, Florida  33134

14              Attorney for Alliance Laundry
                Systems.
15

16                              - - -

17

18

19

20

21

22

23

24

25

☐

3

1                            I N D E X
                             Page 2

3-4-09 Evidentiary Hearing Transcript.txt

2

3

4

5

Witness                                              Page

6

GERALD RUSSELL PARKS

7

    Direct Examination by

8

       XXX

9

    Cross-Examination by

10

       XXX

11

    REDIRECT EXAMINATION BY

12

AGNES SOMMERFIELD

13

    Direct Examination by

14

15

    Cross-Examination by

16

    Redirect Examination by

17

18

19                              - - -

20

21                       E X H I B I T S

22

23                              - - -

24

25

 

4

1                    P R O C E E D I N G S

2    March 4, 2009                       3:00 p.m.

3-4-09 Evidentiary Hearing Transcript.txt

3                          - - -

4          THE COURT:  And on the 3:00 calendar is

5   Agnes Sommerfield, Chapter 13, an FEH on the

6   stay relief motion filed by Alliance Laundry

7   Systems.

8          MR. BELLIDO:  Good afternoon, Your Honor.

9          THE COURT:  Good afternoon.  The Court will

10  take appearances.

11         MR. JACKSON:  Thank you, Your Honor.  Ed

12  Jackson, on behalf of Ms. Sommerfield who is

13  present.

14         THE COURT:  Mr. Jackson, Ms. Sommerfield,

15  good afternoon.

16         Other appearances.

17         MR. BELLIDO:  Good afternoon, Your Honor.

18  Nelson Bellido, on behalf of the interested

19  party Alliance Laundry Systems, Your Honor,

20  here on behalf of Marian Kennady who took ill

21  yesterday, Judge.

22         THE COURT:  Mr. Bellido, good afternoon.

23  All right.  And, Mr. Bellido, this is your

24  motion.

25         MR. BELLIDO:  Yes, Your Honor.

𝟘

                                                  5

1          THE COURT:  First of all, I assume there's

2   no resolution.

3          MR. JACKSON:  No, Your Honor.

4          THE COURT:  Do you wish to make an opening
                                Page 4

3-4-09 Evidentiary Hearing Transcript.txt

5     statement or move on to evidence?

6     MR. BELLIDO:  Yes, Your Honor.  Your Honor,

7     I'm here on behalf of Alliance Laundry Systems.

8     The main issue here, Your Honor, is Your Honor

9     is aware from our filing seeking relief from

10    stay is the laundromat facility that it's our

11    position it is not necessary to the debtor's

12    reorganization.

13    The subject property, Your Honor, there was

14    a note that was executed, Your Honor, back in

15    March of 2008.  It is with a limited liability

16    company, A1A Laundromat of Flagler Beach, LLC,

17    not the debtor, Ms. Agnes Sommerfield.

18    The stay relief is proper, Your Honor,

19    under 11 USC, Section 362(d)(2)(b) because the

20    debtor's estate has no equity in the equipment

21    against which Alliance seeks to exercise its

22    rights.

23    Basically, Your Honor, what we'd like to do

24    is we'd like to proceed with getting a replevin

25    of this property which we are unable to do

6

1     until a resolution of this issue.

2     Ms. Sommerfield has no title on the

3     property, Your Honor.  She has no equity.  She

4     has no possessory interest.  What she did have

5     was she executed a personal guarantee

6     guaranteeing that the property would be paid,

3-4-09 Evidentiary Hearing Transcript.txt

7      but the loan documents all state that this debt
8      is with A1A Laundromat.
9          Another issue, Your Honor, with the
10     USC 11 -- excuse me -- 11 USC 541(b), "The
11     property of the estate does not include any
12     power that the debtor may exercise solely for
13     the benefit of an entity other than the
14     debtor."  So in other words it would be
15     inappropriate for her to proceed and seek
16     protection on behalf of the LLC, which Your
17     Honor will learn has actually been dissolved in
18     this case.
19         The LLC cannot be a debtor under Chapter
20     13.  We all know that it's for individuals who
21     seek reorganization.  So it's not like there's
22     an indispensable party that can even be brought
23     in.
24         Your Honor, what we'd like to recite to you
25     the case of In re:  Rodel 257 B.R. 699,

7

1      bankruptcy, this is out of the Connecticut
2      2001.  And it held for the proposition that
3      although the Chapter 13 debtor's interest in an
4      LLC was property of the estate, the property
5      belonging to the LLC is not.
6          And, Your Honor, specifically in that case
7      it's very analogous to our case.  And we just
8      filed these this morning, probably this

3-4-09 Evidentiary Hearing Transcript.txt

9    morning, Your Honor.

10       The Court held that because the debtor was

11   in possession -- in this case of a tractor

12   solely on behalf of a limited liability company

13   to which he belonged and not his own benefit it

14   was insufficient to bring the tractor into the

15   Chapter 13 estate.  It's very similar to what's

16   trying to be done here, Your Honor.  And I

17   think that that case should be controlling and

18   I should sway Your Honor.

19       Your Honor, this case is even less --

20   Ms. Sommerfield has less of a claim to the

21   property at issue.  She's no longer a member of

22   A1A.  The LLC was administratively dissolved in

23   September of 2008 for failure to file the

24   proper paperwork, Your Honor.

25       Under Florida State Chapter 608.4237, by

8

1    filing bankruptcy Ms. Sommerfield has ceased to

2    be a member of the LLC.  And under Florida

3    Statute 608. 4237, a person ceases to be a

4    member of a limited liability company upon the

5    occurrence of -- and one of those things is

6    filing voluntary petition of bankruptcy.

7        Your Honor, just a couple of more points.

8        In view of the fact that the commercial

9    laundry equipment in premises should not be

10   part of the estate, we believe that Your Honor

3-4-09 Evidentiary Hearing Transcript.txt

11        should require Ms. Sommerfield to amend her
12        Schedule B to delete the 15 commercial washer
13        and dryers.  She alleges, Your Honor, that they
14        are valued at $75,000.  Unfortunately, we
15        believe this value was just picked in the air.
16            We have a gentleman here with 29 years
17        experience, Rusty Sparks -- excuse me -- Rusty
18        Parks who is prepared to testify today, Your
19        Honor, as to the value of that equipment being
20        approximately $200,000.  And we have actually
21        filed a report with the Court, dated
22        January 23rd where we confirmed this was by
23        someone who Mr. Parks works with who
24        recommended -- or estimated the value to be in
25        the $200,000 range and not the $75,000 range.

☐

9

1            Your Honor, the debtor has no possession of
2        the -- excuse me -- the debtor has possession
3        of the premises and the laundry equipment, but
4        such possession is on behalf of the LLC and not
5        hers as I mentioned.
6            And just a couple of more points if Your
7        Honor will bear with me.
8            A1A is not dissolved by the debtor
9        according to the statute, Your Honor.  As I
10       just mentioned, it was absolved LLC.  A1A, as
11       we understand it, the debtor allowed the LLC to
12       be administratively dissolved without following
                            Page 8

3-4-09 Evidentiary Hearing Transcript.txt

13          the requirements of notice to be sent to all
14          the creditors.  Under Florida Statute 608.441,
15          an LLC is required to provide notice to its
16          creditors of its dissolution so that the claims
17          against the LLC may be submitted and payment
18          arrangements made.  And that was not done here.
19              At some point there was some representation
20          that this became a sole proprietorship, Your
21          Honor.  That never occurred.  This is not from
22          the documentations that we've been provided or
23          in the record.
24              Your Honor, I also cite to you 11 USC
25          362(d)(2)(b) for the proposition that the Court

[]

10

1           can grant relief with respect to a stay and act
2           against property where such property was not
3           necessary to an effective reorganization of the
4           debtor.  The property, Your Honor, is simply
5           not necessary for the debtor's reorganization.
6           The debtor has not derived business income.
7               She's filed, Your Honor, a Statement of
8           Financial Affairs.  And in that Statement of
9           Financial Affairs for 2007, she claimed that
10          she derived no income and for 2008 she claimed
11          to derive no income.  Keeping in 2008, your
12          Honor, she's had this equipment up and running
13          since March of 2008 and derived no income.
14              And that's obviously, Your Honor, separated
                              Page 9

3-4-09 Evidentiary Hearing Transcript.txt

15          and apart from our argument.  We believe that

16          there is a lack of adequate protection under

17          362(d)(1).  The lack of adequate protection of

18          an interest in the property is a cause to lift

19          the stay.  Alliance has a security interest in

20          the equipment, Your Honor.  We've listed these

21          equipment specifically.  The equipment upon the

22          last inspection was that these were in

23          excellent condition.  We inspected this

24          property as recently as last Wednesday.

25                Your Honor, in fact, it was made very clear

11

1           by the person there who I believe is the

2           daughter of the debtor who represented to the

3           representative who was here to testify about

4           the value that the equipment is in excellent

5           condition and nobody could do it better than

6           what they have done.

7                 Obviously, Your Honor, we're being deprived

8           of our property.  The fact that this equipment

9           is very valuable, but it's not only the

10          equipment.  It's the build-out of the store.

11          The build-out of the store includes the

12          location.  It includes the permits, Your Honor.

13          We're not talking about just, "Well, the

14          equipment is worth $200,000," but as Mr. Parks

15          will represent to you, we talked about an

16          additional property, $120,000 that Alliance is

3-4-09 Evidentiary Hearing Transcript.txt

17        being deprived of.

18              Very simply, Your Honor, because there are

19        impact fees that we estimate would be $45,000,

20        the construction build-out of this 2,000 square

21        foot facility would be about $120,000.  So once

22        again, Your Honor, we would emphasize and we

23        would ask the Court to take into account first

24        and foremost the property is not titled in the

25        debtor's name.  We believe that's really first

12

1        and foremost.

2              The debtor has no equity to the title and

3        is against every right.  Alliance has a right

4        to the replevin, Your Honor, and the debtor

5        should not assert this property to a stay which

6        she has no title to the property.

7              And lastly, Judge, we again cite the case

8        of In re:  Rodel 257 B.R. 699 which holds that

9        although the Chapter 13 debtor has interest in

10        an LLC, the property belongs to the limited

11        liability company, not to debtor's own benefit.

12        And the Court held the creditor was entitled to

13        the relief from stay and we believe that it's

14        an analogous start for this case and we should

15        be entitled to foreclose on that lien, Your

16        Honor.

17              Thank you.

18                  THE COURT:   Thank you.

3-4-09 Evidentiary Hearing Transcript.txt

19          Would you like to make an opening
20     statement, Mr. Jackson?
21          MR. JACKSON:  I will reserve my opening
22     statement at the beginning of my evidence, Your
23     Honor.
24          THE COURT:  All right.  Your evidence.
25          MR. BELLIDO:  Your Honor, in terms of the

13

1      burden as far as I understood from Ms. Kennady
2      at the last hearing and she appeared
3      telephonically, the debtor had -- was about to
4      take the stand.  I believe that it is part of
5      their burden to establish, as I have identified
6      in the case law, that somehow they have a right
7      to this property having an actual interest in
8      this property, Your Honor.
9           I can bring forth the gentleman who can
10     testify as to the value.  But once again, I
11     don't think that she's entitled to be seeking
12     bankruptcy protection under Alliance.  But I
13     can certainly bring forth my witness here
14     today, Judge.  I can establish what that value
15     is.  And I would call Rusty Parks to testify,
16     Your Honor.
17          THE COURT:  Do we have an admission of the
18     promissory note and the contract documents?  Is
19     there an agreement on the underlying documents?
20          MR. BELLIDO:  Yes, Your Honor, we have

3-4-09 Evidentiary Hearing Transcript.txt

21        them.  And, of course, I would ask that

22        Ms. Sommerfield would take the stand so that we

23        can certainly identify those documents as being

24        the ones that she signed and her signature.

25             THE COURT:  All right.

14

1             MR. BELLIDO:  But I think they're also

2        business records, Your Honor.

3             MR. JACKSON:  Your Honor, I've not been

4        provided with a copy yet.

5             MR. BELLIDO:  We can certainly stipulate to

6        it.

7             THE COURT:  Pardon?

8             MR. JACKSON:  I've not been provided with a

9        copy yet, so I don't know if they're

10       objectionable or not.

11            THE COURT:  All right.  Show it to

12       Mr. Jackson --

13            MR. BELLIDO:  Sure.

14            THE COURT:  -- the copy, if you would.

15            MR. BELLIDO:  (Shows document.)

16            THE COURT:  And those are the documents

17       that are attached to the exhibits to the

18       motion?

19            MR. BELLIDO:  Yes, Your Honor.  The only

20       other one -- I apologize to Your Honor -- the

21       only additional ones we also have is the annual

22       report.  What I'll do, Your Honor, I have an

3-4-09 Evidentiary Hearing Transcript.txt

23     extra notebook.  To make it easier, Judge, what

24     I'm going to hand opposing counsel it's the

25     exhibits are attached there.

                                                         15

1         MR. JACKSON:  You intend to introduce these

2     also into evidence?

3         MR. BELLIDO:  They're the same ones.  I

4     took these from that set, just so you know.

5         MR. JACKSON:  I have no objection to any of

6     the exhibits that I've been shown so far, Your

7     Honor.

8         THE COURT:  Do you have copies of those

9     exhibits or are those the only copies that you

10    have?

11        MR. BELLIDO:  Judge, I can put them

12    together.  I apologize.  They're the ones

13    attached, Your Honor, to our motion for relief

14    from stay.

15        THE COURT:  Let me ask you this, attached

16    to the motion for relief from stay from what I

17    have here are a promissory note for $187,300,

18    dated March 19th, 2008, a personal guarantee

19    Alliance Laundry Systems, LLC security

20    agreement.

21        MR. BELLIDO:  Correct.

22        THE COURT:  Delivery and acceptance

23    receipt, dated 3/25/08.

24        MR. BELLIDO:  That's correct, Your Honor.

3-4-09 Evidentiary Hearing Transcript.txt

25          THE COURT:  Limited Liability Company

☐

16

1        Resolution.

2                MR. BELLIDO:  Correct.

3                THE COURT:  2007 Limited Liability Company

4        Annual Report.

5                MR. BELLIDO:  Yes.

6                THE COURT:  An agreement to assign lease.

7                MR. BELLIDO:  Yes, Judge.  And right before

8        that there is a Schedule A that identifies the

9        equipment specifically by serial number.

10               THE COURT:  I don't have a copy of that.

11               MR. BELLIDO:  I can provide the Court with

12       that.

13               May I approach, Your Honor.

14               THE COURT:  Please.

15               MR. BELLIDO:  (Hands documents.)  That's

16       right before the last page.

17               THE COURT:  Thank you.

18               MR. JACKSON:  Your Honor, I believe what

19       he's described is attached to his motion and

20       I've seen them all and have no objection to

21       their entry.

22               THE COURT:  Good.  Okay.  And they're

23       admitted.  All right.

24               (Whereupon, the document previously marked

25       as Alliance's Exhibit was received into

3-4-09 Evidentiary Hearing Transcript.txt

☐

17

```
1        evidence.)
2               MR. BELLIDO:  Your Honor, would you like me
3        to make argument on these documents?
4               THE COURT:  No, not at this time.
5               MR. BELLIDO:  Okay.
6               THE COURT:  Any further evidence that you
7        think you need to present?
8               MR. BELLIDO:  Judge, only Mr. Park's
9        testimony as to the value of the equipment.
10              THE COURT:  Okay.  That's a good idea to
11       have it.
12              MR. BELLIDO:  Your Honor, I don't know the
13       procedure here.
14              THE COURT:  Mr. Parks, if you would step to
15        the witness stand and raise your right hand.
16   WHEREUPON,
17                    GERALD RUSSELL PARKS
18   was called as a witness herein and, after having
19   first been duly sworn by the courtroom
20   administrator, was examined and testified as
21   follows:
22              COURTROOM ADMINISTRATOR:  Please be seated.
23                    DIRECT EXAMINATION
24   BY MR. BELLIDO:
25        Q.   Mr. Parks, good afternoon.  Could you
```

☐

3-4-09 Evidentiary Hearing Transcript.txt

18

1     please state your full name for the record.

2          A.    My full name is Gerald Russell Parks.

3          Q.    And what is your address, Mr. Parks?

4          A.    5410 Higgins Way, Orlando, Florida 32808.

5          Q.    And could you please tell the Court your

6     educational background to what was your highest

7     level of education?

8          A.    I graduated from high school and went into

9     the Army for three years.

10         Q.    And have you been involved in the laundry

11    business, sir?

12         A.    I've been involved in the laundry business

13    since October 29th of 1980.

14         Q.    And what type of training, if any, did you

15    receive to get involved in the laundry business?

16         A.    I have been involved in every bit of

17    training and guidance.  I started out rebuilding

18    machines in the warehouse and went to delivering

19    and install and then went to construction, and then

20    1984 went into the sales department.

21         Q.    With regards to your prior employment in

22    the laundry -- and for the purposes of

23    clarification -- what do you mean by the laundry

24    business?

25         A.    I worked for the factory direct distributor

☐

19

3-4-09 Evidentiary Hearing Transcript.txt
1   for Speed Queen Laundry Equipment.  I've been with

2   the distributor from -- since 1980 up until

3   present.

4        Q.   And with regards to your employment at

5   Speed Queen, what type of laundry equipment are we

6   referring to, is this residential, commercial?

7        A.   The equipment that we distribute is

8   commercial and industrial equipment only.  We do

9   not deal in residential equipment at all.

10       Q.   And approximately how many commercial and

11  industrial washers and drivers have you been part

12  of sales in your lifetime?

13       A.   Thousands.

14       Q.   And in terms of the number of stores that

15  you have sold and opened equipment for, how many

16  would you say?

17       A.   I'd say at least a hundred.

18       Q.   And with regards to the difference between

19  residential and commercial equipment, what is the

20  difference?

21       A.   The biggest difference is that commercial

22  machine is built to take the customers' abuse out

23  in the laundromats.  Residential machine is made

24  for a home.  It's going to be taken care of by the

25  person that bought it.  So our machines are made

□

20

1   better to last longer and to take more abuse.

2        Q.   And how is it the -- how are you -- strike

Page 18

3-4-09 Evidentiary Hearing Transcript.txt

3   the question.

4            Do you have a relationship with Alliance

5   Laundry Systems?

6       A.    Yes.  Alliance Laundry Systems is the

7   parent company of Speed Queen Laundry Equipment,

8   which I am a factory direct distributor of.

9       Q.    And in this case, are you familiar with A1A

10  Laundromat of Flagler Beach, LLC?

11      A.    Yes, I am.

12      Q.    And how is it that you're aware?

13      A.    Agnes had been buying machines from us

14  prior to when she had her laundry that she closed

15  before she opened the new one, and she has been

16  buying from us for oh, four or five years we had a

17  relationship with her.

18      Q.    Make the record reflect several years,

19  recognizing that you've been dealing with her for

20  four years.

21      A.    Yes.

22      Q.    Have you had a pleasant relationship with

23  Ms. Sommerfield?

24      A.    Absolutely.

25      Q.    And with regards to that relationship with

21

1   Ms. Sommerfield, specifically regarding A1A

2   Laundromat of Flagler Beach, LLC, were you the

3   individual who had dealings with Ms. Sommerfield

4   and with any other member of the LLC?

3-4-09 Evidentiary Hearing Transcript.txt

5    A.   Yes.  Ms. Sommerfield and her daughter

6    Joyce, when they went to move, I was doing

7    everything I could to assist them in the move since

8    they had never actually built a laundry before.  We

9    even tried to let her let us do it so she wouldn't

10    go through the pain of it because we knew what she

11    was getting into.

12    Q.   And what happened?

13    A.   She declined, decided to do it herself.

14    Q.   And you said Joyce, you were referring to

15    Joyce Steinmiller?

16    A.   Yes.

17    Q.   That's her daughter?

18    A.   Yes.  Yes.

19    Q.   Do you know when A1A Laundromat of Flagler

20    Beach, LLC opened up its laundromat for business?

21    MR. JACKSON:  Your Honor, might I object.

22    I thought he was being qualified as an expert

23    witness on value, and I think we're going

24    afield of that.

25    THE COURT:  The objection is overruled.

22

1    MR. BELLIDO:  I'll move on, Judge.  I'll

2    try to get to the crux --

3    THE COURT:  I find the background is

4    interesting and maybe helpful.

5  BY MR. BELLIDO:

6    Q.   Mr. Parks, you testified you've been in the

3-4-09 Evidentiary Hearing Transcript.txt

7    business since 1980?

8        A.    Yes.

9        Q.    And in terms of your experience with

10   evaluation of laundry equipment, could you please

11   explain to the Court what experience you have in

12   that.

13       A.    What we -- being a full service

14   distributor, what we do is we sell you a single

15   replacement machine for an existing laundry or we

16   also go in to the level of investment seminars.

17   We'll have an investor come in, want to get in our

18   business, want to buy existing laundry or something

19   like that.  We go out -- we being me -- and in my

20   market go out, look at the store, the perspective

21   store that the investor wants to buy, figure out

22   what it's making, figure out what it's doing,

23   figure out what it's netting, do an evaluation of

24   the equipment in place and then present what we

25   feel the store is worth to the investor.  I've been

☐

23

1    doing that for about ten years.

2        Q.    With regards to how you determine

3    valuation, if, for example, you were to determine

4    the valuation of equipment in 2007 and the value of

5    it today, can you please explain to the Court what

6    process do you go through to make that

7    determination?

8        A.    Basically what we do, life expectancy of

                        Page 21

3-4-09 Evidentiary Hearing Transcript.txt

9      the commercial machines that were bought in this

10     particular situation from the factory life

11     expectancy is 15 to 20 years.  I always go to the

12     low end and say it's worth -- it will last for 15

13     years.  I'll take the dollar amount of the

14     equipment, divide it by 15 years and that machine

15     will depreciate that much over each year as long as

16     it's well taken care of by the owner of the

17     laundromat.

18         Q.    And is this something that you have done

19     routinely in your experience --

20         A.    Absolutely.

21         Q.    -- as to your valuation?

22             MR. BELLIDO:   Your Honor, at this point I

23         would like Mr. Parks to be considered an expert

24         of the valuation of laundry equipment seeing

25         that he has vast experience of this and as he's

24

1          explained how he goes about his valuation.

2              MR. JACKSON:   May I voir dire, Your Honor?

3              THE COURT:   Certainly.

4                  VOIR DIRE EXAMINATION

5      BY MR. JACKSON:

6          Q.    Sir, have you ever sold used laundry

7      equipment?

8          A.    Yes.

9          Q.    Have you sold laundry equipment used of the

10     type that's in consideration in this case?

3-4-09 Evidentiary Hearing Transcript.txt

11    A.    Yes.

12    Q.    And the straight line depreciation system

13    you've been using, take the 15th off of each year

14    and you're able to actually sell equipment prices

15    that are derived by that method?

16    A.    Yes.

17    Q.    Have you ever purchased used equipment?

18    A.    Yes.

19    Q.    And, typically, what's the mark up

20    difference between the purchase price and the sales

21    price on used equipment?

22    A.    It all depends on how old it is, a

23    ten-year-old machine versus a one-year-old machine.

24    There's too much --

25    Q.    Well, if you were going to value for a

                                                                25

1    piece of equipment that was halfway through its

2    useful life like seven and a half years --

3    A.    Okay.

4    Q.    -- you would put a value on that at one

5    half of the original purchase price?

6    A.    Yes.

7    Q.    Is that what you would pay to buy the use

8    from a closing laundromat?

9    A.    That I would buy from a closing laundromat?

10    Q.    Yes.

11    A.    Probably not.

12    Q.    How would you calculate that number?

Page 23

3-4-09 Evidentiary Hearing Transcript.txt

13    A.    It would all depend on who I've got coming

14    in and what I've got to do to make the deal.  It's

15    set-in-stone figures that I can come up with to

16    your question.

17    Q.    Didn't you examine the equipment that's in

18    this case recently?

19    A.    Yes, last Wednesday.

20         MR. JACKSON:  I have no further questions,

21    Your Honor.

22         THE COURT:  Thank you.

23         Rule 702 says, "If scientific, technical or

24    specialized knowledge will assist the trier of

25    fact to understand the evidence or to determine

26

1         the fact in issue, a witness qualified as an

2         expert by knowledge, skill, experience,

3         training or education may testify thereto."

4              I recognize him as an expert.

5              MR. JACKSON:  Yes, sir, Your Honor.

6              THE COURT:  To help me understand this --

7              MR. BELLIDO:  May I proceed?

8              THE COURT:  Yes.

9              MR. BELLIDO:  I'll try to be brief as

10        possible, Your Honor.

11                  DIRECT EXAMINATION (Continued)

12    BY MR. BELLIDO:

13        Q.    There came an opportunity, Mr. Parks,

14    that you recently went to see the equipment that's

3-4-09 Evidentiary Hearing Transcript.txt

15    at A1A Laundromat of Flagler Beach?

16         A.    Yes.

17              MR. BELLIDO:  Your Honor, may I approach

18         the witness.

19              THE COURT:  Certainly.

20    BY MR. BELLIDO:

21         Q.    (Hands exhibit.)  I'm showing you what used

22    to be --

23              MR. BELLIDO:  Your Honor, I need to

24         premark -- this is one of the exhibits that's

25         already been agreed to by Your Honor.  This is

27

1              Schedule A, Your Honor, that I handed the

2         Court.

3    BY MR. BELLIDO:

4         Q.    I'm showing you what's been marked or I

5    should say in this case it's Schedule A of which

6    has been entered in as an exhibit in this case

7    without objection.

8              Are you familiar with that equipment?

9         A.    Yes, I am.

10         Q.    Did you have an opportunity to inspect that

11    equipment at the A1A Laundromat at Flagler Beach?

12         A.    I went in and visually inspected.

13         Q.    And could you please describe to the Court

14    the condition that you found that equipment in?

15         A.    Excellent.

16         Q.    And what basis do you have for describing

Page 25

3-4-09 Evidentiary Hearing Transcript.txt
```
17   it as excellent as opposed to very good or poor?
18        A.   How you can tell when you go into a laundry
19   if it's being maintained by the owner just simply
20   by the stains all over the machines.  The general
21   public has a habit of spilling soap all over our
22   equipment when they wash, because it's not theirs
23   and they don't care.  And Agnes and Joyce do a
24   wonderful job of keeping their laundry in very
25   great -- very good shape.  It's -- as far as I'm
```

28

```
 1   concerned, the machines look like they did the day
 2   they came out of the box.
 3        Q.   And how old are those machines?
 4        A.   They were originally taken to the laundry
 5   at the end of '07.
 6        Q.   If you have the opportunity to remarket
 7   that equipment in terms of giving it a valuation or
 8   devaluation, taking it into account only the
 9   equipment first, has that equipment increased in
10   value or decreased in value at this point?
11        A.   Obviously, the equipment couldn't
12   appreciate since it is hooked up and has done some
13   loads in it.  Now, the equipment has gone up 15
14   percent in '07 when she bought it.  So if I was
15   remarketing that laundry, the 15th percent markup
16   from what she paid for to now, obviously, that's
17   going to be a huge difference.
18             So I go back to what I said before, as far
```

3-4-09 Evidentiary Hearing Transcript.txt

19  as I'm concerned, the machines have depreciated but

20  only the 15th of a percent per year that I

21  described earlier.

22      Q.    Did there come a time where you evaluated

23  the machine and established a value for that

24  equipment or for the laundromat?

25      A.    Basically, what we do is we go in, when I

29

1   evaluate a store, it's equipment value plus gross.

2       Q.    And what do you mean by that?  So the Court

3   and we can understand.

4       A.    Gross is how much it does a year and the

5   worth of the equipment in place.  So if the

6   machines were five years old, I would do the math

7   on the -- as long as the machines were kept in good

8   shape, I mean, if they were half their age, they

9   would be half their value of when they were bought.

10  And then we would add how much the business itself

11  does, because the business has value and the

12  equipment has value.

13      Q.    And could you explain -- I'm sorry to

14  interrupt you.  Could you explain that to the

15  Court.  How is it that the business has value?

16  What is it that you take into account?

17      A.    How much money that the laundry actually

18  brings in.  In my visit there on Wednesday, I

19  believe I was told that they were doing about 500 a

20  week.  That's 2,000 a month, that's $24,000 a year.

3-4-09 Evidentiary Hearing Transcript.txt

21    If you add the $180,000 in equipment to the $24,000

22    a year, we come up with a price of $200,000, give

23    or take a few thousand.

24         Q.   And how did you come up with the value of

25    $180,000 for the equipment?

30

1         A.   I came up with that based on that it's

2    broken-in equipment, barely broken in.  I mean, the

3    bugs have been worked out.  It's hooked up, they've

4    been run, they've been test run.  They had

5    depreciated but a 15th of a percent on everything

6    in there.

7              And if somebody came in and built the

8    laundry across the street, which is what we compare

9    when we're selling a laundry, it's -- you can buy

10   this one existing or we can build you a new within

11   the same area.  So we show them the difference, if

12   you buy this laundry, it's $200,000.  You get all

13   this equipment.  You get this gross that's in place

14   and you get the value of the infrastructure of the

15   store.

16             If you go across the street and build it,

17   you're going to pay $50,000 in impact fees, you're

18   going to pay $120,000 in construction.  And then

19   you've still got to go buy the equipment which has

20   gone up 15 percent more than what she paid in '07.

21         Q.   Could you please explain to the Court, what

22   do you mean by impact fees?

Page 28

3-4-09 Evidentiary Hearing Transcript.txt

23       A.   The municipality that controls the water

24   and sewer in the state of Florida each -- whether

25   it's the city or county, whichever one they're in,

⬚

31

1    that municipality is going to charge you a water

2    and sewer impact fee because laundromats are

3    considered a high impact to the sewer system.  So

4    they charge us an additional fee as a water and

5    sewer impact fee.

6        Q.   And what do you estimate those impact fees

7    to be?

8        A.   In Flagler I'm estimating them at 3,000.

9    In Orlando it's 5,000.  In Seminole County it's

10   $4,000 and in Volusia County it's 3,000.  So I'm

11   guessing that it's as in line with Volusia County.

12       Q.   And how about the construction costs for

13   the build-out?

14       A.   Construction cost for the build-out of a

15   laundromat typically is $60 to $70 a square foot if

16   it's built from the ground up.  That's interior

17   build-out, not including the building.

18       Q.   So in total, if you could tell the Court,

19   what would you estimate, in your expert opinion,

20   what would be the value of that store for Alliance

21   today?

22       A.   $200,000.

23       Q.   And speaking of Alliance's right, are you

24   familiar as to whether Alliance has assignment

Page 29

3-4-09 Evidentiary Hearing Transcript.txt
25    rights and the landlord's consent to that property?

꠲

32

1      A.   Yes, they do.

2           MR. JACKSON:  Object, Your Honor, to the

3      best evidence  rule.  I would like to see the

4      assignment signed by the landlord rather than

5      his testimony to that document.

6           MR. BELLIDO:  Your Honor, we've provided

7      the settlement, I believe, as an exhibit.

8           MR. JACKSON:  Your Honor, from my side it's

9      not in the exhibits given.  The only thing I

10     have that's signed by Ms. Sommerfield who is

11     the tenant and not the landlord.

12          MR. BELLIDO:  If you'll bear with me, Your

13     Honor, I'll try to search for that.

14          Your Honor, I have a copy of that

15     assignment.  I apologize.  As I told Your

16     Honor, I just came in on this yesterday, so I

17     want to make sure that I've properly provided

18     it.  But, unfortunately, I only have one copy

19     of it which I will show opposing counsel.  I

20     thought I had provided Your Honor with this.

21          THE COURT:  Show it, please.

22          MR. BELLIDO:  (Shows document.)

23          Your Honor, what I've shown the opposing

24     counsel is an agreement of a signed lease.

25          THE COURT:  All right.  And that is

Page 30