3-4-09 Evidentiary Hearing Transcript.txt

⬚

33

1       admitted.

2              (Whereupon, the document previously marked

3        as Alliance's Exhibit was received into

4        evidence.)

5              MR. JACKSON:  Your Honor, that's not signed

6        by the landlord.  That's signed by the tenant.

7        So it's nothing saying that the landlord has

8        agreed.  Same objection, Your Honor.

9  BY MR. BELLIDO:

10       Q.   Are you aware of Alliance having assignment

11  on its properties?

12             MR. JACKSON:  Once again, best evidence

13       rule.  I would object to him testifying to a

14       document that's not available.

15             MR. BELLIDO:  In this specific case, I'm

16       referring to the assignment, Judge.

17             MR. JACKSON:  Your Honor, that's not an

18       assignment by the landlord, and only the

19       landlord can approve the assignment.

20             THE COURT:  The objection is overruled.

21       I'll value the testimony, and I have the copy

22       of the agreement to the assigned lease before

23       me.

24  BY MR. BELLIDO:

25       Q.   Are you aware of Alliance having an

⬚

3-4-09 Evidentiary Hearing Transcript.txt

1      assignment agreement to sign the lease?

2          A.    Yes, I am.

3          Q.    Are you aware of what an agreement to a

4      signed lease does in terms of creating longevity in

5      a location?

6          A.    Yes.

7          Q.    And what does it do?

8          A.    My understanding of the assignment lease is

9      that if something happens and it goes into default,

10     that Alliance will not be locked out of their

11     equipment and they will be able to either go in and

12     remarket the store or they can go in and remarket

13     the equipment.

14         Q.    Is that remarketing of the store, does that

15     provide an extra value to the store for Alliance?

16         A.    Absolutely.

17         Q.    And, again, with regards to your valuation

18     of the equipment, when you in your expert opinion

19     provide the belief that it's $200,000, what is your

20     basis for that?

21         A.    My basis for that is I believe the

22     equipment is worth $180,000 and I believe that the

23     laundry gross is 24,000.  And when I do the math,

24     that comes up to $200,000.

25         Q.    And does that even take into account the

□

1      impact fees and construction build-out?

3-4-09 Evidentiary Hearing Transcript.txt

2        A.    No.   That is just the equipment value.

3   Now, the equipment value is also inclusive of water

4   heaters, the prefab bulkheads which is all above

5   ground plumbing and electrical.  And those are all

6   on the Schedule A.

7            MR. BELLIDO:   I have no further questions,

8        Your Honor, at this time.

9            THE COURT:   Thank you.

10            MR. JACKSON:   Thank you, Your Honor.

11                    CROSS-EXAMINATION

12   BY MR. JACKSON:

13        Q.    Are you familiar with the balance that's

14   owed on this debt?

15        A.    No, I'm not.

16        Q.    The original promissory note in this case

17   that's in evidence showed a balance of, I believe,

18   100 and -- I have to look back to that -- $187,300,

19   assuming that it has not climbed from that amount.

20   According to your testimony there would be equity

21   in this laundromat than -- laundromat is worth more

22   than the debt if that is, in fact, the debt amount?

23        A.    Yes, the laundromat is worth more than the

24   debt of the equipment because of the

25   infrastructure.

36

1        Q.    And the equipment is being well taken care

2   of?

3        A.    Very much so.
                    Page 33

3-4-09 Evidentiary Hearing Transcript.txt

4          Q.    And the method you used to reduce the value

5    of the equipment would normally be that you spread

6    that evenly out over 15 years?

7          A.    On the life expectancy of the machine, yes.

8          Q.    There being 180 months in 15 years, then

9    would it be fair to say that the declining value

10   would only be one, one hundred eightieth each

11   month?

12         A.    Yes.

13         Q.    So if we had to calculate how much this

14   equipment is depreciating in value, that would be a

15   fair number of one, one hundred eightieth of the

16   amount each month?

17         A.    Yes.

18         Q.    And you had said this laundromat has a

19   gross of 24,000?

20         A.    I'm basing that on what I was told from

21   the -- from Ms. Sommerfield.

22         Q.    And that's profit, is it not?

23         A.    That's gross.

24         Q.    How much profit is that?

25         A.    I have no idea.

☐

37

1          Q.    So if it's not making a profit, you would

2    still add the value based on the gross that wasn't

3    profit?

4          A.    We establish the price or the worth of a

5    laundromat based on gross, plus equipment value,

3-4-09 Evidentiary Hearing Transcript.txt

6    yes.

7         Q.   Do you have enough experience in this field

8    to determine if that is enough gross to provide a

9    profit?

10        A.   Yes.

11        Q.   And is that enough income to provide a

12   profit?

13        A.   No.

14             MR. JACKSON:   I have no further questions,

15        Your Honor.

16             THE COURT:   Thank you.

17             MR. BELLIDO:   I have no further questions,

18        Your Honor.

19             THE COURT:   Thank you very much.   You may

20        step down.

21             (Witness excused.)

22             MR. BELLIDO:   Your Honor, I have no further

23        witnesses at this time.   With Your Honor's

24        indulgence, I would like to break just to look

25        for one additional document that I may provide

                                                              38

1         to the Court.

2              THE COURT:   All right.

3              MR. BELLIDO:   Your Honor, may I approach

4         the bench?

5              THE COURT:   Certainly.

6              MR. BELLIDO:   Your Honor, what I do have

7         here is -- I'll show to opposing counsel -- I

                          Page 35

3-4-09 Evidentiary Hearing Transcript.txt

8     have a copy of the landlord's consent that was

9     questioned by the lawyer.

10         MR. JACKSON:  I have no objection to it.

11         MR. BELLIDO:  Your Honor, I'll provide it.

12         (Whereupon, the document previously marked

13     as Alliance's Exhibit was received into

14     evidence.)

15         THE COURT:  Thank you.  Does that conclude

16     your evidence?

17         MR. BELLIDO:  Yes, Your Honor.  I also have

18     the commercial lease, Your Honor, I'd want to

19     attach it to the landlord's consent.  I don't

20     know that it's necessary or relevant but under

21     the abundance of caution, I would like to

22     possibly include that as part of the record.

23         THE COURT:  If you would show that to

24     counsel.

25         MR. BELLIDO:  (Shows document.)

39

1         MR. JACKSON:  No objection, Your Honor.

2         THE COURT:  All right.

3         MR. BELLIDO:  May I approach, Your Honor.

4         THE COURT:  Certainly.

5         (Whereupon, the document previously marked

6     as Alliance's Exhibit was received into

7     evidence.)

8         MR. BELLIDO:  Your Honor, with that

9     Alliance Laundry Systems would rest at this

3-4-09 Evidentiary Hearing Transcript.txt

10          time.    We just reserve the right to have

11          argument, Your Honor.

12               THE COURT:    Mr. Jackson.

13               MR. JACKSON:    Your Honor, if I might

14          provide a brief opening statement to produce

15          the testimony of Ms. Sommerfield would show

16          that she changed her business operations from

17          an LLC to a sole proprietorship shortly before

18          filing this bankruptcy.    She now operates as a

19          sole proprietorship, that the business has

20          become profitable and it is the major source of

21          funding for her Chapter 13 plan.

22               Obviously, I probably don't need to have

23          her testify the fact that she is, in fact,

24          taking adequate protection or proper care of

25          equipment and that the amount being offered in

                                                                40

1          her plan probably exceeds the formula that

2          would derive from the normal adequate

3          protection scheme of taking the balance owed

4          the value of the equipment and figuring out how

5          much decline in the value each month.

6               The testimony we have is that on 180th

7          decline I don't know if Alliance has yet filed

8          a Proof of Claim.    They hadn't as when I last

9          looked, and we had her testimony as to value

10          but assuming it's in the $180,000 range in

11          adequate protection payment of about $1,000 a

                              Page 37

3-4-09 Evidentiary Hearing Transcript.txt

12          month would be appropriate and that we would

13          instead offer the amount being provided for in

14          the plan, which I confess I don't know off the

15          top of my head.  But it's 75,000 at 5 percent,

16          I believe, exceeds that.

17                With that I'd call Ms. Sommerfield to the

18          stand.

19                THE COURT:  Thank you.

20                Ms. Sommerfield, if would you take the

21          stand, please.

22                Would you raise your right hand.

23     WHEREUPON,

24                          AGNES SOMMERFIELD

25     was called as a witness herein and, after having

⬚

41

1      first been duly sworn by the Court, was examined

2      and testified as follows:

3                MR. JACKSON:  Thank you, Your Honor.

4                          DIRECT EXAMINATION

5      BY MR. JACKSON:

6          Q.   Ms. Sommerfield, you're the debtor in this

7      case?

8          A.   Yes.

9          Q.   And you operate a laundromat?

10         A.   Yes.

11         Q.   what's the name of that laundromat?

12         A.   A Beachside Laundromat.

13         Q.   And that's located in where?
                          Page 38

3-4-09 Evidentiary Hearing Transcript.txt

14      A.   Flagler Beach.

15      Q.   And prior to filing your bankruptcy, it was

16  being operated as an LLC?

17      A.   Yes but it had already changed names from

18  A1A to A Beachside Laundromat.

19      Q.   And shortly before filing this bankruptcy,

20  you transferred the laundromat contents, et cetera

21  to yourself so you can operate as sole

22  proprietorship?

23      A.   I did.

24      Q.   And you were now operating and doing the

25  normal paperwork with all the federal taxing

42

1  authorities as a sole proprietorship?

2      A.   Yes.

3      Q.   What income do you have other than the

4  laundromat?

5      A.   Social Security and I do own a piece of

6  property in Lakeland -- well, Winter Haven.

7      Q.   How much net rent do you receive off the

8  property?

9      A.   $1,450 a month.

10      Q.   And how much Social Security do you

11  receive?

12      A.   Since the raise, 910.

13      Q.   And how much profit are you deriving these

14  days from the laundromat?

15      A.   That's hard to say.

3-4-09 Evidentiary Hearing Transcript.txt

16      Q.   Average number?

17      A.   Last month $1,200.

18      Q.   And without the money from the laundromat,

19  are you able to fund your Chapter 13 plan?

20      A.   No.

21           MR. JACKSON:  I have no further questions,

22      Your Honor.

23           THE COURT:  Thank you.

24           Cross-examination?

25           MR. BELLIDO:  Thank you, Your Honor.



☐



43

1                    CROSS-EXAMINATION

2  BY MR. BELLIDO:

3      Q.   Ms. Sommerfield, good afternoon.

4  Ms. Sommerfield, with regards to the promissory

5  note, the secured and the secured agreement --

6           MR. BELLIDO:  May I approach the witness,

7      Your Honor.

8           THE COURT:  Certainly.

9  BY MR. BELLIDO:

10      Q.   (Hands document.) First I'm going to show

11  you the promissory note and then I ask you to take

12  a look at the security agreement, if you would,

13  please.

14      A.   Do you want me to read all of this?

15      Q.   No.  No.  No, ma'am.  With regard to -- we

16  can be here all day.

17                No, ma'am.  With all due respect the only
                              Page 40

3-4-09 Evidentiary Hearing Transcript.txt

18    thing I ask for, with regards to those documents,

19    can you identify each of those documents for the

20    Court?

21         A.   I can identify my signature and my

22    daughter's signature.

23         Q.   And that's the purpose of this --

24         A.   The documents don't really mean anything to

25    me.  It was a means to an end.

44

1          Q.   Very well, ma'am.  My questions with regard

2     to the signature, is that your signature on that

3     promissory note?

4          A.   Yes.

5          Q.   And did you sign that as a managing member

6     of the LLC of A1A Laundromat?

7          A.   I did.

8          Q.   And the same question goes for the security

9     agreement, is your signature on that security

10    agreement?

11         A.   Yes.

12         Q.   And were you a managing member of A1A

13    Laundromat at the time you signed the security

14    agreement?

15         A.   I was.

16         Q.   And the other managing member was your

17    daughter?

18         A.   Yes.

19         Q.   And she's present here today?

Page 41

3-4-09 Evidentiary Hearing Transcript.txt

20      A.    No.

21      Q.    And what is her name?

22      A.    Joyce Steinmiller.

23      Q.    And what is the value of that note?

24      A.    I don't see any value on it.

25      Q.    At the very top there, is there a dollar

☐

45

1    amount?

2          MR. JACKSON:   Your Honor, if I may assist

3    her.

4          THE WITNESS:   Oh, it's underneath it.   It

5    says one hundred eighty-seven three, 187,300.

6          MR. BELLIDO:   May I approach the witness,

7    Your Honor.

8          THE COURT:   Certainly.

9    BY MR. BELLIDO:

10      Q.    (Hands document.)   I'm showing you what's

11   been identified by title as a personal guarantee.

12   Do you see that on the document?

13      A.    I do.

14      Q.    And is that your signature, ma'am --

15      A.    It is.

16      Q.    -- on the personal guarantee?

17      A.    It is.

18      Q.    And did you sign that making yourself

19   personally responsible?

20      A.    I did.

21      Q.    And the other documents were signed on

3-4-09 Evidentiary Hearing Transcript.txt

22    behalf of the limited liability company, correct?

23        A.   It was.

24        Q.   With regards to the personal guarantee in

25    the personal guarantee -- the personal guarantee is

⬚

46

1    a little shorter -- and perhaps you could read

2    this -- there's a section in there that reads, "If

3    the borrower fails to meet all of its obligations,

4    I will immediately pay in accordance with the

5    default provisions of the note all sums due and

6    owing under the original terms of the note and will

7    perform all other obligations of borrower on the

8    note."

9              Do you see that?

10        A.   How far down was that?  Where is it?

11        Q.   I'm sorry, because I'm showing you my only

12    copy.  That's a short summary.

13        A.   I'm trying to read the whole thing.  "If

14    borrower fails to meet all its obligations" -- that

15    part?

16        Q.   Correct.  Could you read that?

17        A.   "I will immediately pay in accordance with

18    the default provisions of the note all sums due

19    under the original terms of the note and will

20    perform all other obligations borrowed under the

21    note."

22        Q.   Thank you.

23        A.   "I will reimburse you for expenses you

                    Page 43

3-4-09 Evidentiary Hearing Transcript.txt

24    incur in enforcing your rights."  Anymore?

25          Q.   No.  That's all you need to read.  Thank

☐

47

1    you.

2                And, ma'am, with regards to when you

3    executed these notes at that time, you were a

4    member of the limited liability company, correct?

5          A.   I was.

6          Q.   And with regards to the equipment that's on

7    Schedule A and -- excuse me.

8                MR. BELLIDO:  With your indulgence, Your

9          Honor, one minute, please.

10               The Court:  Certainly.

11               MR. BELLIDO:  May I approach the witness,

12         Your Honor.

13               THE COURT:  Certainly.

14               MR. BELLIDO:  (Shows document to counsel.)

15               Your Honor, to move this along we've

16         stipulated -- I just wanted to address

17         Schedule A, which is the list of the equipment

18         that counsel stipulated.  This is the equipment

19         in the store, the assignment of the lease which

20         has also been stipulated to and the delivery

21         acceptance receipt that I wish to stipulate --

22         that has been stipulated to that I wanted to

23         address with the debtor.

24    BY MR. BELLIDO:

25          Q.   Ma'am, do you recall having a conversation
                          Page 44

3-4-09 Evidentiary Hearing Transcript.txt

☐

48

1    with someone from Alliance by the name of Paul

2    Hagan back in September of 2008?

3        A.    I had many conversations with Paul.

4        Q.    Do you recall expressing to Mr. Hagan that

5    you could only handle $2,000 in monthly payments?

6        A.    Or less.

7        Q.    And do you --

8        A.    I told him 2,000 would be a burden.

9        Q.    Do you recall Mr. Hagan's statement that

10   Alliance could not afford to accept such low

11   payments?

12       A.    He did tell me that.

13       Q.    And with regards to your Statement of

14   Financial Affairs that we've already stipulated to

15   the Statement of Financial Affairs --

16            MR. BELLIDO:   May I approach the witness,

17       Your Honor.

18            THE COURT:   Certainly.

19   BY MR. BELLIDO:

20       Q.    (Hands document.)   Ma'am, I've handed you

21   the Statement of Financial Affairs.   Is that a

22   Statement of Financial Affairs that you prepared?

23       A.    I believe it was prepared in the lawyer's

24   office.

25       Q.    Right.   And you executed it, correct?

3-4-09 Evidentiary Hearing Transcript.txt

49

1          A.   Yes.  I filled out so many papers.  I don't
2     recognize this one in particular.  But a lot of it
3     was done on the computer, so. . .
4          Q.   Let me draw --
5          A.   I'll stipulate that this is true.
6          Q.   Well, thank you.  That's the question.
7     With regards to the year 2008 there, it states
8     there that the income you received from employment
9     of the operation of the business was zero.  Do you
10    see that?
11         A.   That's because I was talking -- we put all
12    our money into the buildup of the new laundromat.
13    Every penny we took in went into that.  I paid my
14    daughter, whom I had to pay, and the rest of it
15    went into the new buildup.
16              MR. BELLIDO:  Your Honor, I'm going to
17         object as being nonresponsive to my question.
18              THE COURT:  Overruled.
19              THE WITNESS:  I'm sorry.
20    BY MR. BELLIDO:
21         Q.   That's okay.
22              You state there that you made zero that
23    year, correct?
24         A.   Correct.
25         Q.   And 2007 as well, the income that you

3-4-09 Evidentiary Hearing Transcript.txt

50

1    received from employment was zero, correct?

2        A.    Correct.

3        Q.    And in 2006 your answer was 3,174, correct?

4        A.    Correct.

5        Q.    And is that your signature on the Statement

6    of Financial Affairs indicating that it's a

7    truthful and correct statement?

8        A.    I don't see my signature.  I see my name.

9              MR. JACKSON:  If I might, Your Honor.

10             THE COURT:  Certainly.

11             MR. JACKSON:  Back page.

12             THE WITNESS:  Back page.

13             MR. JACKSON:  She's right, Your Honor.

14        Electronic filing, there are no signatures.  I

15        will stipulate that she signed the original.

16        That will resolve that.

17             MR. BELLIDO:  Judge, isn't that a foul in

18        basketball?  I'm kidding.

19             THE WITNESS:  He told me to tell the truth.

20    BY MR. BELLIDO:

21        Q.    It is a truthful statement.  No.

22    Absolutely.  That's why we're all here to do,

23    ma'am.  Thank you.  It is a truthful statement you

24    represented, correct.

25             Was it your intention in filing bankruptcy

51

1    to force Alliance to accept lower monthly payments?

3-4-09 Evidentiary Hearing Transcript.txt

2    A.    Absolutely not.

3    Q.    Let's get to the issue of the annual

4    report.  Are you aware that no annual report was

5    filed for A1A so it was administratively

6    dissolved --

7    A.    My accountant --

8    Q.    I'm sorry.  Let me finish my question,

9    please.  I swear I'll let you speak.

10    A.    I'm sorry.

11    Q.    Are you aware that there was no annual

12    report filed for A1A Laundromat, LLC and so it was

13    administratively dissolved in September of 2008 as

14    a result of a failure to file an annual report?

15    A.    Yes, I was aware.  My accountant -- can I

16    say my accountant told me to just let it go?

17    Q.    Okay.  Are you aware that when there's a

18    dissolved limited liability company, that under

19    Florida law you need to send a notice of

20    dissolution to your creditors, are you aware of

21    that?

22         MR. JACKSON:  Objection, Your Honor.  I

23         don't think that's an accurate statement as to

24         an involuntary dissolution.  It's

25         administrative.

0

52

1         THE COURT:  Objection is overruled.  He can

2         ask the that question.  She can either answer

3         the question whether she's aware of it or not.

Page 48

3-4-09 Evidentiary Hearing Transcript.txt

4          THE WITNESS:  I was not aware of that.

5    BY MR. BELLIDO:

6          Q.   Are you aware whether the LLC sent any

7    notice of dissolution to any of its creditors?

8          A.   There was not a formal letter sent, but I

9    did notify Rusty and I did notify Paul that I had

10   changed from A1A to A Beachside Laundromat.

11         Q.   Ma'am, do you have any evidence of that

12   that you changed?

13         A.   Phone.

14         Q.   That's it, nothing else?

15         A.   (Nods head.)

16              MR. BELLIDO:  I have no further questions,

17        Your Honor.

18              THE COURT:  Thank you.

19                   REDIRECT EXAMINATION

20   BY MR. JACKSON:

21         Q.   Ms. Sommerfield, my understanding is you

22   moved the laundromat location in 2008?

23         A.   True.

24         Q.   And I take it that costs money to do?

25         A.   Yes.

53

1          Q.   So taking into account the cost of moving

2    with whatever money was made, you ended up making

3    no net profit for 2008?

4          A.   True.

5          Q.   You said earlier you notified Paul of the

                         Page 49

3-4-09 Evidentiary Hearing Transcript.txt

6    change from the one LLC to the other LLC?

7         A.    True.

8         Q.    Who is Paul?

9         A.    Paul Hagan, the one I was dealing with on

10   the money.

11        Q.    And he's an employee of?

12        A.    Alliance.

13        Q.    How much is your Chapter 13 plan payment?

14        A.    2,935.

15        Q.    Are you making it, you're paying it?

16        A.    Yes, just barely but, yes.

17             MR. JACKSON:   I have no further questions,

18   Your Honor.

19             THE COURT:   Thank you.

20             Any cross-examination with respect to those

21   areas?

22             MR. BELLIDO:   Nothing further, Your Honor.

23             THE COURT:   Thank you very much.   You may

24   step down.

25             (Witness excused.)

54

1              THE COURT:   And before I forget it,

2    Mr. Bellido, here are copies of the landlord's

3    consent and the commercial lease.

4              Mr. Jackson, a photocopy of the landlord's

5    consent and the commercial lease.

6              MR. JACKSON:   Thank you, Your Honor.

7              THE COURT:   Mr. Clark made those.

3-4-09 Evidentiary Hearing Transcript.txt

8         Any further evidence, Mr. Jackson?

9         MR. JACKSON:  No, Your Honor.

10        THE COURT:  Thank you.

11        Any rebuttal evidence?

12        MR. BELLIDO:  No, Your Honor.

13        THE COURT:  Good.  Then we're ready for

14    closing argument.  Would you like to make it

15    now or take a short break?

16        MR. BELLIDO:  Could we have two minutes,

17    Judge, just so I could go to the bathroom?

18    That would be great.

19        THE COURT:  Yes.  Take a short recess and

20    let me know when you're ready.

21        (Recess taken.)

22        THE COURT:  Closing arguments.

23        MR. BELLIDO:  Your Honor, good afternoon.

24    Again, Nelson Bellido, on behalf of Alliance

25    Laundry Systems.

⬜

55

1        Your Honor, as we've established, we're a

2    party in interest in this matter.  I believe

3    that first and foremost, Judge, there's been no

4    evidence established that this debtor is the

5    appropriate debtor.  The representation, other

6    than her testimony this is still a

7    proprietorship, is contrary to the loan

8    documents.  It's contrary, Your Honor, to what

9    hasn't been rebutted that it's September 2008

3-4-09 Evidentiary Hearing Transcript.txt

10    that there was an administrative dissolution.

11    It's contrary to the testimony that pursuant to

12    the Florida statute that she never notified her

13    creditors.

14        That being said, Your Honor, A1A is the

15    appropriate borrower.  A1A is not part of this

16    bankruptcy.  And as such, Your Honor, the

17    debtor should not be seeking Chapter 13 relief

18    against Alliance.  The LLC is not an

19    individual.  They weren't eligible to be a

20    debtor under Chapter 13 and we provided Your

21    Honor -- and, Your Honor, I have an extra copy

22    of that.  I'm not sure if you have a copy of

23    the case law of In re:  Rodel which establishes

24    that although the Chapter 13 debtor's interest

25    in an LLC was property of the estate, the

☐

56

1    property belonging to a limited liability

2    company is not.

3        Your Honor, another key, if Your Honor were

4    to even consider that it is appropriate,

5    besides the fact that we don't believe that she

6    has a personal interest and that A1A was

7    dissolved, in addition to that, Your Honor, in

8    terms of the income that's derived 362(d)(2)(b)

9    provides that a court shall grant relief with

10    respect to a stay of an act against property

11    where such property is not necessary for an

3-4-09 Evidentiary Hearing Transcript.txt

12      effective reorganization to property.

13            This property is not necessary for the

14      debtors reorganization, Your Honor, because the

15      debtor has not derived what we believe is

16      business income from the operation from the

17      statement that she herself has sworn to the

18      Statement of Financial Affairs.

19            The item one on the Statement of Financial

20      Affairs that we showed her, she specifically

21      testified to that it was her statement and she

22      stands by it that she made no income in 2008

23      and 2007.

24            Judge, in addition, the lack of adequate

25      protection, under 362(d)(1) the lack of

57

1       adequate protection of an interest in the

2       property is a cause to lift the stay.  Alliance

3       has a security interest in the laundry

4       equipment listed on the debtor's schedules.

5             Your Honor, we've established that the

6       value of this equipment goes beyond not only

7       the washer and dryers but we've provided Your

8       Honor with a lease and the landlord's consent,

9       which was questioned at first but then agreed

10      to that we have an extreme interest here,

11      Judge.

12            I mean, from the perspective of the fact

13      that not only is the equipment in excellent

Page 53

3-4-09 Evidentiary Hearing Transcript.txt

14    condition, which I commend the debtor for, but

15    beyond that this value is not only the $200,000

16    but the additional value of being able to

17    remarket this store to another individual who

18    could come in and actually work the equipment

19    and pay Alliance appropriately pursuant to the

20    terms of the note were once again with the LLC.

21         And, Your Honor, I don't think there's been

22    a question as to the value of the equipment.

23    There was no evidence that this equipment is

24    worth $75,000.  There was no evidence provided

25    by anyone on the other side.

58

1         We established without doubt the value of

2    this equipment through Mr. Parks is $200,000.

3    It's been three years, Judge.  We would

4    estimate it would require a payment of $5,700 a

5    month for Ms. Sommerfield to pay Alliance.

6         She stated in the past that she could pay

7    $2,000 or less.  And, Your Honor, it would be

8    our position that is certainly insufficient

9    when Alliance has an interest in this

10    equipment, Your Honor, which clearly

11    establishes that the value is so much more.

12         This property, the personal property, the

13    laundry equipment, remains on the property of

14    A1A.  They remain functioning, and Alliance is

15    being prejudiced each and every day that we

3-4-09 Evidentiary Hearing Transcript.txt

16    don't have the opportunity to be able to

17    remarket the store and bring in somebody else

18    to allow us and to continue and make payments.

19        And, Judge, once again I guess I don't want

20    to -- I'd be remiss if I didn't focus on the

21    fact -- I don't believe that Alliance is the

22    appropriate creditor, per se, in Chapter 13 for

23    the reasons that I've delineated.  And I have

24    case law if Your Honor doesn't have it to that

25    effect.

59

1        Thank you.

2        THE COURT:   Thank you.

3        Mr. Jackson.

4        MR. JACKSON:   Your Honor, on the first

5    issue which I believe is cause under the thesis

6    that a person can easily incorporate but is it

7    impossible to unincorporate, I don't believe

8    there's any supporting the law for that

9    premise.

10        Ms. Sommerfield testified that she

11    converted back to a sole proprietorship,

12    transferred everything to her.  I've seen no

13    case law that has been offered.  I've seen no

14    statute that has been offered that prevents

15    someone from converting back to a sole

16    proprietorship from an LLC.

17        I think, therefore, Ms. Sommerfield's

Page 55

3-4-09 Evidentiary Hearing Transcript.txt

18    testimony that she did just that and owns the

19    equipment does, in fact, establish that she

20    owns the equipment.

21        Going to the adequate protection -- I'm

22    sort of skipping over -- is there equity in the

23    property?  We have zero evidence, I'd just

24    stress to the Court.  We have a balance or

25    value of equipment testified to, purposes of

60

1    adequate protection at 200,000, a note of a

2    187,300.  But whether that was paid off, paid

3    down, increased, we don't know.

4        With no evidence that there's no equity in

5    the property, I shouldn't have to put on

6    anything about adequate protection.  However,

7    we do have just that.  Assuming a value or

8    balance due in the $180,000 range, the expert

9    has testified that it declines in value of

10    about 180th per month which should be about

11    $1,000 per month.  He also testified that the

12    equipment is being taken care of quite well.  I

13    think he frankly complimented Ms. Sommerfield

14    on that.  So the equipment certainly is not in

15    danger, is not suffering any undue depreciation

16    period.

17        I don't know if the creditor is aware that

18    there's a local order in this division that

19    says that as soon as they were to file a Proof

3-4-09 Evidentiary Hearing Transcript.txt
20        of Claim, the trustee will start distributing

21        the plan payments to them so they wouldn't have

22        had to file for adequate protection.  But if

23        they are getting irreparably harmed, you have

24        to wonder why that hasn't happened.

25              However, even with no proof that there is

0

                                                        61

1         no equity, even with no indication that

2         adequate protection is necessary, we certainly

3         have no objection to the plan amount being

4         distributed to this creditor even retroactive

5         to the first payment since we certainly intend

6         to go forward with this plan.

7               The value of the equipment for purposes

8         today only relates to is there equity for

9         adequate protection, and we're sort of stuck in

10        the position of liking their number for the

11        purposes of this hearing even in certain

12        purposes of a 506 hearing which we can't file

13        until a claim is filed.

14              But I would ask the Court to grant adequate

15        protection under the plan payment and let us

16        move forward in this case.  And if we lose on

17        the valuation hearing when the claim is filed,

18        that really appears to be the heart of their

19        complaint is that the equipment is worth more

20        than what we say it is.  But they've got to

21        file a claim so we can have a hearing on that

3-4-09 Evidentiary Hearing Transcript.txt

22       and have that, in fact, determined.

23              THE COURT:  Thank you.

24              Anything further?

25              MR. BELLIDO:  Judge, I just want to make a

⬚

                                                        62

1        point.

2               In terms of the argument that you can't

3        change to a sole proprietorship, our documents,

4        the security -- and I could provide a

5        supplemental memo, but I've been representing

6        Alliance for a very long time.  Our client's

7        would be entitled to notice under Florida

8        statute.  We would be entitled to notice if

9        there was a dissolution of the LLC.

10              And I believe that one just can't

11       sui sponte say, "Oh, I've become a sole

12       proprietor, and I put Alliance on notice by

13       phone call."

14              I would ask Your Honor to take that into

15       serious account that statement because I don't

16       believe that that's accurate.

17              Thank you, Your Honor.

18              MR. JACKSON:  Your Honor, if I might

19       respond to that briefly.  Assuming that they

20       certainly could do that, assuming for a moment

21       this is default in the agreement it certainly

22       is one of many defaults, lack of payment being

23       a more serious one.  And I certainly don't

                        Page 58

3-4-09 Evidentiary Hearing Transcript.txt
24    dispute their ability to clear the balance due.
25    So whether or not that would be in default, I

☐

63

1     think that's somewhat to be determined.
2          THE COURT:  Thank you.  Let me take a
3     moment, please.
4          THE COURT:  Okay.  Thank you both very
5     much.  I appreciate your presentations and your
6     testimony.
7          The real question here is whether
8     Ms. Sommerfield has an interest in the
9     equipment and what the extent of that interest
10    is.  Clearly, if the LLC existed now Rodel
11    would be -- your case would be applicable
12    because the debtor owns an interest in the LLC,
13    and it's the LLC that owns the interest in the
14    equipment.
15         The testimony is that the LLC was dissolved
16    on the advice of the accountant and its assets
17    distributed to Ms. Sommerfield as a sole
18    proprietor.  And so she has the possessory
19    interest in the equipment at this time.
20         And so for the purposes of the motion
21    today, I consider the possessory interest by
22    Ms. Sommerfield and then look to 362(d)(1) and
23    362(d)(2) for other criteria or relief from
24    stay.  (d)(2)is whether the debtor has an
25    equity in the property as necessary for an

3-4-09 Evidentiary Hearing Transcript.txt

[]

64

1       effective reorganization.  Clearly, this is

2       necessary for her reorganization.

3            And with respect to the testimony today, it

4       appears that she may have equity.  It could be

5       close.  The value of the equipment, around

6       180,000; the value of the equipment and the

7       business, a couple of hundred -- 200,000.  The

8       note is 187.  It may have been paid some.

9       Close enough so that she has a business worth

10      preserving if she has an interest in the

11      business.

12           Then with respect to adequate protection

13      under (d)(1), the testimony is that the

14      depreciation of the equipment is in the

15      neighborhood of $1,000 a month.  And so the

16      payments to the creditor preconfirmation should

17      be either payments that are provided by the

18      plan or $1,000, whichever is greater.  And so

19      the stay relief motion is not at this time with

20      the provision that the adequate protection

21      payments be begun and the case was filed in

22      November 10.  Testimony is that the trustee

23      payments have been made, and so the parties

24      should make arrangements to have the trustee

25      forward the appropriate payments to the movant.

[]

3-4-09 Evidentiary Hearing Transcript.txt

```
 1              And if those don't equal the $1,000 a
 2         month, then Ms. Sommerfield should make up the
 3         difference directly to the movant arrangements
 4         for any previous payments should be made within
 5         ten days.  All future payments should be made
 6         timely to the trustee.  And if they're not made
 7         timely, then telephone notice -- 48 hours to
 8         cure, stay relief on the filing of an affidavit
 9         if there's no cure.
10              This leaves some issues for confirmation
11         and leaves issues for any objection to claim or
12         valuation.  It is an adequate protection order
13         on the basis that I have expressed.
14              Mr. Bellido, would you and Mr. Jackson work
15         together and prepare an order on the hearing?
16         Draft it and review with Mr. Jackson.
17              MR. BELLIDO:  Very well, Your Honor.
18              MR. JACKSON:  Sure, Your Honor.
19              THE COURT:  All right.  Thank you both very
20         much.
21              MR. BELLIDO:  Thank you, Your Honor.
22              MR. JACKSON:  Thank you, Your Honor.
23              (Whereupon, 4:41 p.m., on Wednesday,
24         March 4, 2009, the hearing in the
25         above-entitled matter was concluded.)
```

3-4-09 Evidentiary Hearing Transcript.txt

```
 1                   C E R T I F I C A T E

 2

 3    STATE OF FLORIDA )

 4    COUNTY OF DUVAL  )

 5         I, Loretta D. McDonald, Professional Court

 6    Reporter, do hereby certify that the attached

 7    material represents the original records of

 8    proceedings before the United States Bankruptcy

 9    Court, Middle District of Florida, Jacksonville

10    Division, before the Chief Judge Paul M. Glenn,

11    United States Bankruptcy Judge, in the matter of

12    AGNES E. SOMMERFIELD; such Record is an accurate

13    and complete recordation of the proceedings which

14    took place.  A transcript of this Record has been

15    produced on March 20, 2009, the original of which

16    was delivered to The Transcript Copy Custodian,

17    Jacksonville, Florida.

18

19                        STATEWIDE REPORTING SERVICE

20

21

22    _____
                    LORETTA D. MCDONALD

23

24

25
```

### Rule 7067-1

### REGISTRY FUND

(a)   In accordance with Fed. R. Bankr. P. 7067, the Clerk shall maintain an interest-bearing registry account ("Registry Fund").   Any party wishing to deposit funds into the Registry Fund may do so only upon order of the Court and notice to every other interested party.   The party seeking to make the deposit shall serve a copy of the signed order upon the Clerk of Court, and/or the Financial Administrator for the United States Bankruptcy Court, Middle District of Florida.   Upon receipt of the signed order, the Clerk of Court shall cause the funds to be deposited into the Registry Fund pursuant to 28 U.S.C. § 2041. The Clerk of Court and members of his staff are not required to comply with the deposit request if the party seeking to make the deposit fails to make service in accordance with this local rule.

(b)   In accordance with 28 U.S.C. § 2042, no funds deposited in the Registry Fund shall be withdrawn except by order of the Court.   The Clerk shall deduct from any interest paid on the Registry Fund a registry fee as authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office.   This fee shall be deducted upon release of the funds.

---

### *Notes of Advisory Committee*

### *2004 Amendment*

This amendment sets out how parties can place funds in the registry of the court and what steps are needed to withdraw funds from the registry of the court.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**

IN RE:

                          CASE NO. 08-07008-PMG

AGNES E. SOMMERFIELD,

                          Chapter 13

    DEBTOR.

_____/

### NOTICE OF APPEAL

    NOTICE IS GIVEN that ALLIANCE LAUNDRY SYSTEMS LLC ("ALLIANCE") by and through undersigned counsel, hereby appeals to the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §158(a)(3)[1] and Rules 8001 of the Federal Rules of Bankruptcy Procedure from the Order Denying Motion for Relief from Stay and Granting Adequate Protection (DE # 46), entered by the United States Bankruptcy Court for the Middle District of Florida, the Honorable Paul M. Glenn, on the 19th day of March, 2009, from the provision denying relief from stay. A copy of the Order is attached hereto as Exhibit A.

    This Notice of Appeal is timely pursuant to Rules 8002 and 9006 of the Federal Rules of Bankruptcy Procedure.

    In accordance with Federal Rule of Bankruptcy Procedure 8001(a), the names of the parties to this appeal and the names and addresses of their respective counsel are as follows:

---

[1] Appellant's Motion for Leave to Appeal shall be filed forthwith and within the time period permitted by Rule 8002.

CASE NO. 08-07008-PMG

**APPELLANT**

ALLIANCE LAUNDRY SYSTEM, LLC

Counsel:    Nelson Bellido, Esq.
Marian Kennady, Esq.

CONCEPCION SEXTON & MARTINEZ
355 Alhambra Circle, Suite 1250
Coral Gables, Florida 33134
Tel:         (305) 444-6669
Facsimile:    (305) 444-3665
Email:      nbellido@cfclaw.com
mkennady@cfclaw.com

**APPELLEE**

Debtor:    Agnes Sommerfield

Counsel:    Edward P. Jackson, Esq.
255 N. Liberty St.
Jacksonville, FL 32202
Tel: (904) 358-1952
Email: edward@edwardpjackson.com

In accordance with Federal Rule of Bankruptcy Procedure 8001(a), a copy of the

Order is attached to this Notice of Appeal.

Respectfully submitted,

**CONCEPCION SEXTON & MARTINEZ**
355 Alhambra Circle, Suite 1250
Coral Gables, Florida 33134
Telephone No. (305) 444-6669
Facsimile No. (305) 444-3665

By:    /s/ Marian Kennady, Esq.
MARIAN KENNADY, ESQ.
Fla. Bar No. 379580
NELSON BELLIDO, ESQ.
Fla. Bar No. 974048

Concepción Sexton & Martinez, Attorneys at Law
355 Alhambra Circle Suite 1250 · Coral Gables, Florida 33134 · Tel. 305.444.6669 · Fax. 305.444.3665
www.cfclaw.com

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA

### APPEAL COVER SHEET

| Appellant | Appellee |
|---|---|
| ALLIANCE LAUNDRY SYS., LLC | AGNES SOMMERFIELD |
| Bankruptcy Case No. 08-07008-BKC-PMG | Adversary Case No. _____ |
| Attorney: (Name, Address and Telephone Number) | Attorney: (Name, Address and Telephone Number) |
| Concepcion, Sexton, Martinez, P.A.<br>355 Alhambra Cir. Ste 1250<br>Coral Gables, FL 33134<br>(305) 444-6669 | Edward P. Jackson, Esq.<br>255 N. Liberty St.<br>Jacksonville, FL 32202<br>(904) 358-1952 |

## NATURE OF PROCEEDING

Check appropriate item

☐ Appeal pursuant to 28 USC §158
　　Notice of Appeal filed: _____
　　Date of Order Appealed: _____
　　Title of Order Appealed: _____
　　Debtor's County of Residence: _____

☐ Motion to Withdraw Reference
　　Filed: _____　　By: _____

☑ Interlocutory Appeal
　　Title of Interlocutory Order or Decree: Order Denying Relief from Stay and Granting Adequate Protection
　　Date of Order or Decree: March 19, 2009
　　Brief Description of Matter Appealed: _____

☑ Motion for Leave to Appeal
　　Date Filed: Appellant's Motion for Leave to Appeal shall be filed forthwith and within the time period permitted by Rule 8002.

☐ Other _____

☐ Designation in Appeal
Have arrangements been made with a Court Reporter for Transcript?　☑ Yes　☐ No
If not, do you intend to do so?　☐ Yes　☐ No　If ordered, on what date? _____

_Marian Kemak_
Attorney/Appellant

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**

IN RE:

                                CASE NO. 08-07008-PMG

AGNES E. SOMMERFIELD,

                                Chapter 13

      DEBTOR.

_____/

**ORDER DENYING MOTION**
**FOR RELIEF FROM STAY AND GRANTING**
**MOTION FOR ADEQUATE PROTECTION**

THIS MATTER came before the Court for hearing on March 4, 2009, upon the

Motion of Alliance Laundry Systems, LLC ("Alliance") for Relief from Stay and upon

consideration of the Court, it is:

      **ORDERED:**

     1.    The Motion for Relief from Stay is denied.

     2.    Movant holds a valid lien encumbering the Laundromat facility and

equipment in which the Debtor has an interest.

     3.    Movant is entitled to receive direct adequate protection payments to be

disbursed by the Trustee in the amount of $1,415.34.

4.      In accordance with the General Order of April 25, 1994, the Standing Chapter 13 Trustee shall pay to Movant the sum of $1,434.15 from each interim payment received from the Debtor.

5.      Debtor shall be in compliance with the Order by timely making all interim Plan payments to the Trustee, except that a higher interim payment may be required if the Plan payment is not sufficient to provide for court-ordered adequate protection payments and payments to unsecured creditors as set forth in the Plan. In the event that a higher interim payment than that set forth in the Plan is required by the Trustee, the Trustee shall so indicate in the written response that she files to the Motion for Relief from Stay or for Adequate Protection.

6.      Debtor shall be in default under this Order if she fails to make any interim Plan payments not excused by Court order and does not cure such default within seventy-two hours of telephonic notice of default.

7.      An order lifting the stay may be entered without further hearing seventy-two hours after the Trustee or Movant files an affidavit of default, a copy of which must be served on Debtor's attorney. In the event that the affidavit of default is filed by Movant rather than Trustee, it must state with particularity that information that Debtor was not in compliance with this Order was provided by the Trustee's office on a date stated in the affidavit.

8.      The Order shall be entered unless Debtor has responded with a counter-affidavit or unsworn declaration under penalty of perjury to the effect that the most recently due interim payment was actually made to the Trustee no later than seventy-two hours after its due date. No other form of response shall be entertained.

2

9.      Any order lifting the stay pursuant to this Order following the filing of an affidavit of default by any party shall be set aside without hearing upon the filing by the Trustee of a statement that the Debtor was in fact, at all times in compliance with this Order and that the stay was lifted in error.

10.     In the event that a plan is confirmed by this Court, all interim payments will be applied to confirmed plan payments.

DATED on _March 19, 2009_ in Jacksonville, Florida.


_____
PAUL M. GLENN
CHIEF UNITED STATES BANKRUPTCY JUDGE

Copies furnished to:

Agnes E. Sommerfield
1204 S. Central Ave.
Flagler Beach, FL  32135-3721

Edward P. Jackson, Esq.
Counsel for Debtor
255 N. Liberty Street, First Floor
Jacksonville, FL  32202

Douglas W. Neway, Trustee
POB 4308
Jacksonville, FL 32201

3